JOHN THOMAS SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 65717, 71888, 75858. Promulgated August 9, 1940.

*David Sher, Esq.,* for the petitioner.
*Frank D. Strader, Esq.,* and *Ellyne E. Strickland, Esq.,* for the respondent.

SUPPLEMENTAL OPINION.

MURDOCK: The Board promulgated findings of fact and an opinion in this case. See 40 B. T. A. 387. It then entered its decision on October 31, 1939. Thereafter, on January 8, 1940, the Supreme Court decided a case of this same taxpayer for another year. *Higgins* v. *Smith,* 308 U. S. 473. The Board, upon motion of the Commissioner, vacated its decision to consider the possible effect of the Supreme Court decision upon the Board decision. See order of January 18, 1940. The parties were heard and they filed briefs. The Board now concludes that the decision of the Supreme Court requires modification of the decision of the Board in one respect and in only one respect.

The petitioner argues that we have no power to change our original decision. That decision was vacated before it became final, before the taking of an appeal, and before the time for appeal had expired. If the Board correctly interprets the Supreme Court decision, then the vacation was proper because it permits the Board to correct an error which would otherwise justify an appeal. The Board believes that it has jurisdiction and deems the question of the timeliness of the Commissioner's motion unimportant under the circumstances.

The Board allowed the petitioner deductions for losses in 1929 upon sales of stock by the petitioner to his wholly owned corporation, Innisfail. The Supreme Court disallowed deductions for losses from similar sales in 1932 upon the ground that such transactions were too insubstantial to give rise to deductible losses. That decision is controlling here, and upon its authority we hold that the petitioner is not entitled to deductions for the losses of $48,811 and $39,240 claimed for 1929 upon the sales of 1,900 shares of Hudson Motor Car Co. common and 1,000 shares of Aldebaran Corporation stock to Innisfail. The decision does not require complete disregard of the separate corporate entity, Innisfail, for tax purposes and we are not disposed to go further than has the Supreme Court.

Reviewed by the Board.

*Decisions will be entered under Rule 50 and those for 1930 and 1931 will be in the same amounts as were entered on October 31, 1939.*

*Supplemental Dissenting Opinion.*

HARRON, dissenting: The Board's reconsideration of the original majority opinion makes it necessary to supplement the original minority opinion in this case, reported in 40 B. T. A. 387, at pages 402–424.

The reconsideration now given in the supplemental opinion of the majority is limited to the question of whether petitioner sustained losses on the Hudson Motors and Aldebaran stocks, purportedly sold to his wholly owned corporation in 1929, so as to be entitled to deductions from taxable income. This limited reconsideration of the several questions presented in this case is premised upon the belief that the Supreme Court's decision in *Higgins* v. *Smith*, 308 U. S. 473, involving a later tax year, 1932, does not require reconsideration of any of the other questions decided by the Board in the original opinion. With this I disagree.

Petitioner received dividends in 1930 and 1931 on the Hudson Motors stocks purportedly sold to Innisfail in 1929. No dividends were paid on the Aldebaran stock. Petitioner received dividends on Chrysler stocks in 1929, 1930, and 1931. The Commissioner has determined that all of these dividends constituted petitioner's income, taxable to him, and part of the deficiency is due to this determination. While the Supreme Court did not have before it any question relating to petitioner's liability for tax on dividends on stocks used in transactions of petitioner with his wholly owned corporation, it seems clear that the views expressed by the Supreme Court on the question that was before it requires that the Board should reconsider the additional question relating to taxation of petitioner on the dividends in question in this case.

In the *Higgins* v. *Smith* case, the Supreme Court held that the continued dominion and control of petitioner over the securities there involved was such that there was not "enough of substance" in the transactions to determine a loss to petitioner. In this case, with respect to the dividends in question there is so much evidence to show a continued dominion and control of petitioner over the stocks on which the dividends were paid and over other stocks which petitioner claims to have sold on credit to his wholly owned corporation in transactions exactly like the "sales" involved in the case before the Supreme Court, that there appears to be much similarity between the dividends question before the Board and the particular question that was before the Supreme Court in the other case. Petitioner disclaims liability for tax on the dividends in question upon the claim that his wholly owned corporation was in debt to him and that he received the dividends in liquidation of the debt, with respect to the dividends received in 1929 and 1930. Petitioner disclaims liability

for tax on the dividends received by him in 1931 upon the claim that he borrowed from Innisfail those sums, albeit they were paid to him directly by the Chrysler and Hudson Motors corporations. In the case before the Supreme Court, the Court went to the substance of certain transactions and held that there was no real loss to support petitioner's claim for deductions. In this case, by the same reasoning, the Board should examine the situation to determine whether the so-called debt of the wholly owned corporation to petitioner had enough of reality to relieve petitioner from tax on the dividends of 1929 and 1930 allegedly kept in liquidation of the debt; and, also, whether there was any real loan of the 1931 dividends from Innisfail to petitioner to relieve petitioner from tax on the dividends of 1931. Or, from another viewpoint, it would seem that, without considering the reality or the unreality of the alleged debt of Innisfail to petitioner in 1929 and 1930, or the reality or unreality of the alleged debt of petitioner to Innisfail in 1931, the Board should consider whether for tax purposes these dividends which were so completely within the petitioner's control as to be subject at all times to his unfettered command and use, *should be attributed to petitioner as his income*, taxable to him in each of the three years.

Without attempting to repeat the facts, which are set forth more fully in the earlier minority opinion than in the earlier majority opinion (40 B. T. A. 402–424) it should be pointed out again that the Hudson and Chrysler stock certificates remained in petitioner's name, that the dividends paid on those stocks by the Hudson and Chrysler corporations were paid to petitioner by checks made out in his name, and that the checks were deposited by petitioner directly in his own bank account. At some time in 1930 petitioner did not any longer have, as an excuse for the continued receipt of those dividends, the existence of any so-called debt of the corporation he owned to him, but, nevertheless, he continued to receive and retain the dividends in the guise of borrowings by him from the corporation. With respect to his transactions constituting debits and credits in a running account with the corporation owned by him, and the so-called lending and borrowing back and forth, petitioner testified that he did not want the corporation ever to pay him any money, which only means that petitioner's plan was devised primarily for the purpose of relieving himself from taxation on income which he claims he effectively siphoned into the corporation so as to relieve himself from income tax.

It appears to have been stated so frequently by the Supreme Court, in various ways in various cases, that a taxpayer is to be taxed on income subject to his unfettered command and use, from which he is the real recipient of the economic benefits, that the question here would seem to turn on just that. See *Corliss* v. *Bowers*, 281 U. S.

376; *Burnet* v. *Wells*, 289 U. S. 670; *Helvering* v. *Clifford*, 309 U. S. 331. Taking the question of petitioner's liability for tax on the Hudson and Chrysler dividends in 1929, 1930, and 1931 in its broad and most essential aspects, does not petitioner's income tax liability rest upon the fact that petitioner's command, use, privileges, and benefits in those dividends were so substantial and so real as to make him taxable on that basis? While I believe strongly that there was no debt from the wholly owned corporation to petitioner in 1929 and 1930, cognizable for tax purposes, against which the dividends could be offset to relieve petitioner from taxation, even if such were assumed to be technically true, is the situation here not the type of situation which may be disregarded in order to effectively serve the purposes of the taxing statutes? Is it not true that, so far as petitioner's dominion and control were concerned, neither the wholly owned corporation nor the transactions relied on effected any substantial change in petitioner's ownership of the stocks on which the dividends in question were paid? Should it not be held that petitioner's devices fail to relieve him from the burden of taxation? As for the situation in the year 1931, there seems no ground whatever over which petitioner can escape taxation on the dividends paid directly to him in that year. He could not then anticipate future "debts" of his wholly owned corporation to him to offset the income he received in 1931 from the dividends. See *Lucas* v. *Earl*, 281 U. S. 111.

The reasoning employed by the Supreme Court in the *Higgins* v. *Smith* case, if applied here to the question of petitioner's liability for tax on the Hudson and Chrysler dividends in 1929, 1930, and 1931, would seem to support sustaining the Commissioner's determinations. I respectfully dissent from the majority's contrary conclusion and its failure to reconsider this particular question in the light of the recent Supreme Court decision.

TURNER agrees with this dissent.